**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

| | |
|---|---|
| **VIRTUAL SOLUTIONS LLC,**<br><br>Plaintiff,<br>v.<br><br>**MICROSOFT CORP.,**<br>Defendant. | Case No. 12-CV-1118 (SAS) |

**PLAINTIFF VIRTUAL SOLUTIONS, LLC'S MOTION FOR RECONSIDERATION OF THE COURT'S FEBRUARY 15, 2013 MEMORANDUM OPINION AND ORDER**

Dated: March 1, 2013

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ………………………………………………………………. 1

II. LEGAL STANDARDS ………………………………………………………….. 2

1. Legal Standards Governing Motion for Reconsideration ………………… 2

2. Pertinent Legal Standards Governing Summary Judgment of Indefiniteness ………………………………………………………….. 2

III. ARGUMENT ……………………………………………………………… 3

1. There is No "Logical Contradiction" – Everyone Agrees on What Claim 1 Requires ……………………….…………………………………... 3

2. The Court Improperly Required that the Alleged Contradiction be Resolved Solely Based on the Patent Specification, Failing to Account for the Knowledge of the Relevant Art Possessed by One of Ordinary Skill in the Art ……………………………………………………………….. 8

3. The Court Improperly Shifted the Burden of Proof to Virtual Solutions …. 10

V. CONCLUSION ………………………………………………………………. 12

# TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008) …………………………………………………… 3, 8, 9, 10

*HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270 (Fed. Cir. 2012) …………………………………………………… 2

*IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005) …………………………………………………… 2, 10

*Medisim Ltd. v. Bestmed LLC*, 2012 WL 1450420 (S.D.N.Y. Apr. 23, 2012) ………………………………….. 2

**Rules** **Page(s)**

Fed. R. Civ. Pro. 60(b)…………………………………………………………….. 1, 2

Local Rule 6.3……………………….. ………………………………………………… 1, 2

## I. INTRODUCTION

The Court's February 15, 2013 Memorandum Opinion and Order (Doc. 68)[1] is premised on there being "an apparent logical contradiction within claim 1." There is no logical contradiction in claim 1. All parties and experts agree that claim 1 requires generating a behavior vector using: (1) position information; and (2) a physical characteristic signal including position information. If all parties and all experts agree on what is required by claim 1 it cannot be indefinite. As a result, the Court's ruling constitutes clear error and would result in a manifest injustice to Virtual Solutions if allowed to stand.

The Court also applied the incorrect legal standard in deciding Microsoft's motion for summary judgment of indefiniteness. The Court failed to account for the knowledge an ordinary skilled artisan would possess of the relevant art area, which may be used to resolve any ambiguity. The Court required that the "apparent logical contradiction" be resolved solely by the intrinsic evidence, which is not the correct legal standard. In addition, the Court improperly shifted the burden of proof to Virtual Solutions, requiring that Virtual Solutions affirmatively demonstrate that the "apparent logical contradiction" is resolved by the patent specification.

As explained *infra*, (1) there is no contradiction; (2) if there is, it does not have to be resolved solely by the patent specification; and (3) it is not Virtual Solution's burden to demonstrate that the specification resolves any such contradiction. At a minimum, a genuine issue of material fact exists in the facts underpinning the indefiniteness inquiry. Under Fed. R. Civ. Pro. 60(b) and Local Rule 6.3, the Court should therefore reconsider its February 15, 2013 Order and deny Microsoft's motion for summary judgment.

---

[1] Hereinafter "February 15, 2013 Order."

## II. LEGAL STANDARDS

### 1. Legal Standards Governing Motion for Reconsideration

Under Fed. R. Civ. Pro. 60(b), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" where there is a mistake or for any other reason that justifies relief. Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court. *Medisim Ltd. v. Bestmed LLC*, 2012 WL 1450420 (S.D.N.Y. Apr. 23, 2012). A motion for reconsideration is appropriate where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id*. A motion for reconsideration may also be granted to "correct a clear error or prevent manifest injustice." *Id*.

The purpose of Local Rule 6.3 is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Id.* Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the Court." *Id*. Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively, to reargue "those issues already considered when a party does not like the way the original motion was resolved." *Id*. A motion for reconsideration is not an "opportunity for making new arguments that could have previously been advanced," nor is it a substitute for appeal. *Id*.

### 2. Pertinent Legal Standards Governing Indefiniteness and Summary Judgment

Indefiniteness is a question of law with factual underpinnings. *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1279 (Fed. Cir. 2012). In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent. *IPXL Holdings, LLC*

*v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005). The standard for indefiniteness can only be met when an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area. *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008).[2]

## III. ARGUMENT

In its February 15, 2013 Order, the Court stated:

> Microsoft has unearthed an apparent logical contradiction within claim 1, and it will have met its burden of proving invalidity by clear and convincing evidence unless Virtual resolves this contradiction. To do that, Virtual must demonstrate that the claim's apparent contradiction is resolved by the specification, as read by a skilled artisan.

Order, p. 13. This excerpt highlights the errors in the Order, including: (1) there is no contradiction; (2) to the extent there is a contradiction, it does not have to be resolved in the patent specification; and (3) the burden is always on Microsoft to establish, by clear and convincing evidence, that claim 1 is indefinite.

### 1. There is No "Logical Contradiction" – Everyone Agrees on What Claim 1 Requires

Claim 1 requires "a physical characteristic signal including position information." '353 patent, 16:13-14. Claim 1 also requires generating "a behavior vector of said at least one virtual actor **using said position information and said at least one physical characteristic signal [including position information]**." '353 patent, 16:22-23. There is no contradiction in this statement. The claim requires that the behavior vector be generated based on: (1) position information; and (2) a physical characteristic signal that includes position information. '353 patent, 2:34-35.

---

[2] All emphasis is added unless otherwise noted.

As discussed during the hearing on this issue, one way to think of the "physical characteristic signal" could be as a vessel or container that is made up of numerous pieces of information. Transcript 100:21-102:10 (Jan. 22, 2013).[3] The parties agree that "position information" is merely raw data or information. Transcript 103:10-105:11. Taking this into account, the following diagram illustrates what is claimed in claim 1.




As shown above, the "physical characteristic signal" may include numerous data points, whereas the other side of the "and," merely includes the raw "position information." To the extent a situation exists where the only information contained in the "physical characteristic signal" is "position information," the left side and right side of the "and" remain different. The left side contains the "physical characteristic signal" data structure. The right contains merely the raw "position information," which is why both are necessary to generate the behavior vector.

This was explained at the hearing as follows:

[3] Hereinafter "Transcript."

| | |
|---|---|
| The Court: | True, but in that example you would have position information on both sides of the "and." |
| Mr. Grochocinski: | I agree with you. And the point – I think of physical characteristic signal as a vessel almost, to use a term that Mr. Cordell used. |
| The Court: | Yes. |
| Mr. Grochocinski: | So you can have a bunch of information that will be part of that overall container or vessel. The fact that in a hypothetical that we are not necessarily sure even exists, you would only have one piece of information in that container or vessel which is position information, doesn't mean that you can't also be using that information independently. And yes, in this example this potential hypothetical, I agree with you, you end up in a scenario where you have at the end of the day only position information on both sides. But the fact is that the claim allows for that. And so you have to – |
| The Court: | Why does the claim allow for that? |
| Mr. Grochocinski: | It says – |
| The Court: | Are you leaving out the word and? Because that would be superfluous then. If it is not different then it is superfluous and you would say using position information. |
| Mr. Grochocinski: | It is different, your Honor, and the reason is – the difference is in the fact that you have a container on the left side, okay, that can have a bunch of other information that is part of it, but in this instance it may only have position information. |
| The Court: | Right. |
| Mr. Grochocinski: | But that isn't the same as just the raw position data on the right side. They are two different things. So at the end of the day while the only information, okay, that is on each side may ultimately be the same in this non-conventional hypothetical we have been discussing, they're still different. Think of a large container on the left and then some raw data on the right. Well, those are two very different things and that's exactly what the patentees were discussing. |

Transcript 100:21-102:10.

In explaining Figure 4, the patent states that "[a]n interpreter 66 filters and analyzes the raw signals from these sensors a[nd] produces a physical characteristic signal which can be a bus or a single vector." '353 patent, 7:5-8. In this way, the "physical characteristic signal" can be analogized to a green bean casserole. The end product (i.e., the green bean casserole) is the "physical characteristic signal." However, it does not become a casserole until the ingredients (e.g., raw sensor signals) are added to a casserole dish (e.g., data structure) and baked in an oven

(interpreter). One of the ingredients in a green bean casserole is green beans (e.g., position information). Even in the scenario where the only ingredient added to the casserole is green beans, the casserole dish (data structure) containing baked (interpreted) green beans (position information) is not the same as raw green beans (raw position information). In the same vein, a physical characteristic signal that is comprised of interpreted position information is not the same as the raw position information.

Another analogy may further illustrate this point. At trial, a party can offer a document into evidence. The party can also provide the same document to its expert. The expert can rely on that document in the formation of his or her opinion. The party can enter the expert's opinion into evidence at trial via testimony. The document and the expert's testimony are distinct items of proof, even if the document is the sole basis for the expert's opinion. This is just like the position information and a physical character signal; one is the signal while the other is information used to generate the signal. Simply because one is included in the other does not make both items the same.

Claim 1's requirement that the behavior vector be generated based on: (1) position information; and (2) a physical characteristic signal that includes position information is logical. This Court agreed with Dr. Zavadsky and acknowledged that it is "not *inherently* contradictory for a computer system to use data, such as 'position information,' in two different ways." Order, p. 30. This is what claim 1 requires – using position information in its raw form <u>and</u> using position information, and likely other information, in its interpreted form as part of a larger data structure (i.e., a physical characteristic signal).

Microsoft contends that claim 1 requiring both a physical characteristic signal that includes position information and position information is redundant. If claim 1 did not require a

"physical characteristic signal including position information," there would be no mechanism for the interpreted sensor signals to be delivered to the analyzer to generate the behavior vector. If claim 1 did not requires the raw position information independent of the physical characteristic signal, then the raw, non-interpreted position information would not be present. The patent specification indicates that this raw non-interpreted position information must be present and is needed to generate the behavior vector for a virtual actor:

> Also, the information on the visitor activity and position could be represented on a contour map for ease of analysis and processing. This position indication will enable other modules of the system to trace guides for the movements of the virtual actor. For example, a curious actor will go towards the visitor and a frightened actor will retreat far from the visitor. The first derivative of the position of the visitor will indicate the displacement of the visitor. The second derivative of position will detect sudden movements of the visitor.

'353 patent, 4:35-44. In other words, if claim 1 only required a "physical characteristic signal" that includes position information, the "analyzer" would not have the position information in raw form, which is necessary to generate the behavior vector. Rather, the claimed invention would merely have the end result of the interpretation of the raw sensor signals (i.e., a physical characteristic signal).

In the February 15, 2013 Order, the Court stated that the '353 patent "does not disclose why position information must be used twice to generate a behavior vector." Order, p. 42. This is incorrect. The '353 patent makes clear that position information is used as an input, along with other raw sensor signals, to the interpreter, which creates the physical characteristic signal. '353 patent, 7:2-10. In addition, the raw position information is independently used, for example, to indicate the displacement of the visitor, sudden movements of the visitor, etc. '353 patent, 4:29-49. The relationship between these limitations is clearly stated in claim 1 itself. They are both necessary inputs which, taken together, are used to generate the behavior vector.

There is no disagreement about what the claims require. All parties agree that claim 1 requires generating a behavior vector using (1) position information; and (2) a physical characteristic signal including position information. This is fully disclosed to the public and is undisputed by the parties to this matter. Dr. Bobick acknowledged that this is required by claim 1. Bobick Decl. ¶¶ 11-12 (Doc. 42). Dr. Zavadsky acknowledged that this is what is required by claim 1. Zavadsky Decl. ¶ 16 (Doc. 56). The issue is not one of indefiniteness. All parties understand what is required by claim 1. Rather, if anything the issue is one of infringement, which is not currently before the Court.

**2. The Court Improperly Required that the Alleged Contradiction be Resolved Solely Based on the Patent Specification, Failing to Account for the Knowledge of the Relevant Art Area Possessed by One of Ordinary Skill in the Art**

The February 15, 2013 Order stated:

> The '353 Patent, though, does not disclose why position information must be used twice to generate a behavior vector. Claim 1 simply states that position information and the physical characteristic signal (which might contain only position information) are both to be used to generate a behavior vector; and the balance of the patent does nothing to resolve this paradox.

Order, p. 42. As discussed in the preceding section, the referenced paradox is non-existent and the '353 patent specification does describe why position information "must be used twice to generate a behavior vector." Setting this aside, the '353 patent specification does not have to describe this relationship for claim 1 to be definite. Imposing such a standard on Virtual Solutions is improper.

The definiteness inquiry requires that a court take into account an ordinary skilled artisan's "knowledge of the relevant art area." *Halliburton Energy Services, Inc.*, 514 F.3d at 1249-50 (holding that the standard for indefiniteness can only be met when an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of

the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area). The proper inquiry is not whether the '353 patent specification disclose why position information must be used twice. The proper inquiry is whether one of ordinary skill based on their review of the intrinsic record, as well as his/her knowledge of the relevant art area, would be able to understand the metes and bounds of the claims. On this point, at a minimum, there was conflicting expert testimony thereby creating a genuine issue of material fact.

The Court agreed with Dr. Zavadsky that "it is not *inherently* contradictory for a computer system to use data, such as 'position information,' in two different ways." Order, p. 30. The Court further agreed that "because the specification of the '353 Patent indicates that object-oriented programming techniques were to be used in implementing the claimed invention, there are a number of reasons that data *might* be used in different ways within the '353 Patent." Order, p. 30. Dr. Zavadsky further opined that, based on his review of the intrinsic record and his knowledge of the relevant art area, he is able to understand the bounds of the claims when read in light of the specification. The Court acknowledged that "Virtual's expert has identified a plethora of reasons why, in a hypothetical patent, it might make sense to use position information in different ways." Order, p. 42. These reasons are based on Dr. Zavadsky's knowledge of the relevant art area and must be considered in the definiteness inquiry. *Halliburton Energy Services, Inc.*, 514 F.3d at 1249-50. The fact that Dr. Bobick opined differently does not render the claims indefinite. At best, it creates a genuine issue of material fact.

The opinions rendered by Dr. Zavadsky and Dr. Bobick, as well as the evidence relied on by both, are the factual underpinnings of the legal question presented by the definiteness inquiry. While indefiniteness is a question of law, the factual underpinnings of the inquiry must be

viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent. *IPXL Holdings, LLC*, 430 F.3d at 1380. Viewing the evidence in the light most favorable to Virtual Solutions, and resolving all doubts in favor of Virtual Solutions, at a minimum a genuine issue of material fact exists preventing summary judgment. By applying the incorrect standard, the Court failed to properly take into consideration the knowledge of the relevant art possessed by an ordinary skilled artisan, such as Dr. Zavadsky. As a result, the Court should reconsider its ruling and deny Microsoft's motion for summary judgment.

**3. The Court Improperly Shifted the Burden of Proof to Virtual Solutions**

Microsoft had the burden of establishing, by clear and convincing evidence, that an ordinary skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area. *Halliburton Energy Services, Inc.*, 514 F.3d at 1249-50. Despite this, the February 15, 2013 Order shifted the burden from Microsoft to Virtual Solutions, requiring Virtual Solutions to present evidence to resolve the "apparent logical contradiction." Order, p. 31. The Court required Virtual Solutions to "demonstrate that the claim's apparent contradiction is resolved by the specification, as read by a skilled artisan" and to "show that the specification discloses a way in which position information may be used alongside a physical characteristic signal (which might contain only position information) to generate a behavior vector." Order, p. 31.

As disclosed herein, the evidentiary record demonstrates this. Setting this aside, it was not, and is not, Virtual Solutions' burden to establish this. Rather the burden lied, and remains, with Microsoft. Microsoft did not meet its burden and the Court's attempt to shift the burden to Virtual Solutions was improper.

## IV. CONCLUSION

Based on the foregoing, Virtual Solutions respectfully requests that the Court reconsider and reverse its February 15, 2013 Order and deny Microsoft's motion for summary judgment.

**DATED: March 1, 2013**

**Respectfully submitted,**

/s/ Stephanie H. To
Anthony G. Simon
Michael P. Kella
Stephanie H. To
THE SIMON LAW FIRM, P.C.
800 Market Street, Suite 1700
Saint Louis, Missouri 63101
P. 314.241.2929
F. 314.241.2029
asimon@simonlawpc.com
mkella@simonlawpc.com
sto@simonlawpc.com

Timothy E. Grochocinski
Aaron W. Purser
INNOVALAW, P.C.
1900 Ravinia Place
Orland Park, Illinois 60462
P. 708.675.1974
F. 708.675.1786
teg@innovalaw.com
apurser@innovalaw.com

Harold Y. MacCartney, Jr.
MacCARTNEY, MacCARTNEY,
KERRIGAN & MacCARTNEY
13 North Broadway, P.O. Box 350
Nyack, New York 10960
P. 845.358.0074
F. 845.358.0793
lmaccartney@mmkmlaw.com

**COUNSEL FOR PLAINTIFF**
**VIRTUAL SOLUTIONS LLC**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served on all counsel of record via the Court's CM/ECF system on March 1, 2013.

/s/ Stephanie H. To
Stephanie H. To